*IN THE UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF MARYLAND*

| | | |
|---|---|---|
| **TERRI MASSIE-BURRELL** | * | |
| 12437 Diploma Drive | | |
| Reisterstown, MD 21136 | * | |
| | | |
| **Plaintiff** | * | Civil Action No. _____ |
| | | |
| v. | * | |
| | | |
| **THE JOHNS HOPKINS UNIVERSITY** | * | |
| 3400 N. Charles Street | | |
| Baltimore, MD 21218 | * | |
| | | |
| Serve on: | * | |
| **Arthur P. Pineau, Esq.** | | |
| The Johns Hopkins University | * | |
| Office of the Vice President | | |
| and General Counsel | * | |
| 3400 N. Charles Street | | |
| 113 Garland Hall | * | |
| Baltimore, MD 21218 | | |
| | * | |
| and | | |
| | * | |
| **CATHERINE AXE** | | |
| The Johns Hopkins University | * | |
| Office of the Vice Provost | | |
| Garland Hall | * | |
| 3400 N. Charles Street | | |
| Baltimore, MD 21218 | * | |
| | | |
| and | * | |
| | | |
| **KEVIN SHOLLENBERGER** | * | |
| The Johns Hopkins University | | |
| Office of the Vice Provost | * | |
| Garland Hall | | |
| 3400 N. Charles Street | * | |
| Baltimore, MD 21218 | | |
| | * | |
| **Defendants** | | |
| | * | |

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT

Plaintiff, Terri Massie-Burrell ("Dr. Massie-Burrell"), through counsel makes this complaint against her former employer, the Johns Hopkins University, ("JHU"), as well as her former supervisor, Catherine Axe ("Ms. Axe"), and JHU Vice Provost of Student Health, Kevin Shollenberger ("Mr. Shollenberger"). Dr. Massie-Burrell asserts claims for racial and disability discrimination and retaliation pursuant to 42 U.S.C. §2000(e) (Title VII) and 42 U.S.C. §12112 (the Americans with Disabilities Act ("ADA")), as well as claims for racial discrimination and retaliation in the making and enforcement of Plaintiff's employment contract pursuant to 42 U.S.C. § 1981. Dr. Massie-Burrell also asserts claims for racial and disability discrimination pursuant to Md Code State Govt §20-606 (Maryland Fair Employment Practices Act ("MFEPA")). Dr. Massie-Burrell contends she was subjected to racial and disability discrimination, complained about it, and then was fired in retaliation. Dr. Massie-Burrell seeks declaratory and injunctive relief, and awards of compensatory damages, punitive damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This is a civil action arising under the laws of the United States. This Court has jurisdiction pursuant to 28. U.S.C. § 1331.

2. The acts and omissions giving rise to Plaintiff's claims occurred in Maryland, and there is no other district in which this action may be brought. Venue lies in this Court pursuant to 28 U.S.C. §1391(b).

## PARTIES

3. Dr. Massie-Burrell is a resident of Maryland, and resided here during the events giving rise to this case.

2

4. The Johns Hopkins University is a private research university incorporated in the State of Maryland, at which Plaintiff was employed during the events giving rise to this case.

5. Ms. Axe is a resident of Maryland. Ms. Axe served as Dr. Massie-Burrell's direct supervisor during the events giving rise to this case.

6. Mr. Shollenberger is a resident of Maryland. In his capacity as Vice Provost, Mr. Shollenberger had hiring and firing powers at JHU during the events giving rise to this case.

## FACTS COMMON TO ALL COUNTS

7. Dr. Massie-Burrell was employed by JHU in August, 2018 in Baltimore, Maryland. Dr. Massie-Burrell was initially employed as the Director of Student Disability Services ("SDS") at JHU Homewood but was promoted to Senior Director of SDS in July, 2021, wherein she oversaw SDS offices at four JHU schools.

8. Dr. Massie-Burrell was successful in her employment with JHU. A JHU alumna, Dr. Massie-Burrell took pride in serving her alma mater.

9. Ms. Axe was hired as the Executive Director of SDS at JHU in March 2019, a role in which she served as Plaintiff's direct supervisor and generally oversaw the operation of JHU SDS offices during Plaintiff's employment.

10. Dr. Massie-Burrell is Black and was born with a congenital limb amputation. Ms. Axe is White and, upon information and belief, suffers from no physical disabilities.

11. Shortly after being hired by JHU, Ms. Axe subjected Dr. Massie-Burrell to a pervasive and severely hostile work environment.

12. Throughout their working relationship, Ms. Axe routinely spoke to Dr. Massie-Burrell in a condescending manner and minimized or undermined her workplace accomplishments.

13. On June 16, 2020, Ms. Axe misinterpreted a chain of email communications between the student Diversity Leadership Counsel and Dr. Massie-Burrell. Due to the Covid-19 pandemic, the parties were working virtually so Ms. Axe called Plaintiff. In the ensuing phone call, Ms. Axe berated and screamed at Plaintiff.

14. In Spring, 2021, Dr. Massie-Burrell was asked by Ms. Axe to prepare information about her SDS unit for an upcoming JHU Board of Trustees meeting. When Dr. Massie-Burrell asked if she could attend, Ms. Axe falsely informed her that only supervisors would attend. Dr. Massie-Burrell later learned that several of her peers in other units had attended the meeting.

15. In May, 2022, Dr. Massie-Burrell participated in a search committee for the Assistant Director of SDS for the School of Education. While Dr. Massie-Burrell recommended a non-White candidate for the position, two White members of the search committee recommended a White candidate instead. Ms. Axe supported the White committee members' recommendation and accused Dr. Massie-Burrell of racial bias in her ranking of the candidates.

16. From June 27, 2022 to November 11, 2022, Dr. Massie-Burrell was on FMLA leave due to a badly broken ankle. While she was in recovery, SDS support staff were instructed by Ms. Axe to prioritize tasks assigned to them by Ms. Axe while work that was due to Dr. Massie-Burrell fell behind.

17. After returning from her FMLA leave, Dr. Massie-Burrell was provided accommodations that allowed her to work remotely while she continued to recover from her ankle injury. However, due to staffing shortages and workplace dysfunction that Ms. Axe had created, Dr. Massie-Burrell was unable to take advantage of these accommodations. Instead, Dr. Massie-Burrell routinely worked 12-hour days, including weekends in order to compensate for the

4

dysfunction in the office. Despite the pending Covid pandemic, Dr. Massie-Burrell often worked on-site to maximize her effectiveness.

18. Dr. Massie-Burrell's efforts allowed her office, which provides accommodations for students with documented disabilities, to remain in compliance with federal and State disability law and to serve the compelling needs of disabled students.

19. On November 22, 2022, Dr. Massie-Burrell wrote a respectful email to Ms. Axe requesting she refrain from speaking to Plaintiff in a derogatory and condescending way, especially in front of SDS employees that reported to her. Apparently angered by this, Ms. Axe began engaging in activities to undermine Dr. Massie-Burrell's workplace performance and reputation (and indirectly, to undermine the provision of accommodations to disable students).

20. Between December 2022 and June 2023, Ms. Axe transferred multiple support staff out of Dr. Massie-Burrell's office or reassigned them to report directly to Ms. Axe. These staff members were provided with increased pay and additional work from home days as an incentive. Consequently, Dr. Massie-Burrell's office became understaffed, under-resourced, and demoralized.

21. During this period, Dr. Massie-Burrell's work environment became extremely hostile. Staff members with whom she had previously enjoyed positive and productive relationships became cold and uncooperative.

22. During this period, an employee of Ms. Axe accused Dr. Massie-Burrell of misusing a university credit card to purchase a gift for a colleague, despite the fact that Dr. Massie-Burrell was never given a university card and had purchased the gift with her own money.

23. During this period, Dr. Massie-Burrell would routinely observe colleagues around Ms. Axe whispering and snickering when she entered the workspace.

24. In December, 2022, Ms. Axe asked Dr. Massie-Burrell to forecast budget projections for the upcoming fiscal year, but did not give her access to critical documents and reports. When Dr. Massie-Burrell was finally given access to these documents weeks later, she was still expected to submit her projections on the same deadline as her White colleagues who had been given timely access to the documents.

25. In March, 2022, Ms. Axe hired Kyle Howell ("Mr. Howell") as a temporary employee to provide clerical assistance in Dr. Massie-Burrell's office.

26. Throughout Mr. Howell's employment, he refused to take direction from Dr. Massie-Burrell and spoke to her belligerently. Mr. Howell was slow to complete work and often took extended breaks. When Dr. Massie-Burrell asked Ms. Axe to request a replacement from the temp agency, Ms. Axe refused, saying she would give him additional training. (Ms. Axe had replaced temps who displeased her on at least two previous occasions).

27. After her conversation with Ms. Axe, Dr. Massie-Burrell noted that Mr. Howell's insolent behavior and lackluster performance worsened, as it had become obvious he enjoyed Ms. Axe's protection.

28. At other points during this period, Ms. Axe provided Dr. Massie-Burrell with staff from other SDS offices on loan. However, Dr. Massie-Burrell was not permitted to assign work to these staff members and was chastised by Ms. Axe for "overstepping" when she attempted to do so.

29. Following the November 22nd email, Dr. Massie-Burrell sought support from HR and the Office of Institutional Equity ("OIE"). However, her concerns were not taken seriously. Dr. Massie-Burrell requested conflict resolution and mediation services, but was falsely informed the University no longer offered those resources. Dr. Massie-Burrell also requested a transfer to

another unit but was told it could not be done, despite White colleagues being offered transfers in the past.

30. On May 24, 2023, Dr. Massie-Burrell emailed OIE again to express her concerns regarding Ms. Axe's mistreatment of her and its impact on the effectiveness of her office. In that email, Dr. Massie-Burrell explicitly stated she believed her mistreatment was on the basis of her race, disability, and the FMLA leave she had taken after breaking her ankle. OIE responded, assuring Dr. Massie-Burrell they would take her concerns seriously and would commence an investigation.

31. On July 6, 2023, Dr. Massie-Burrell was invited to a virtual meeting by HR and Mr. Shollenberger, ostensibly to discuss the status of their investigation into her complaints. However, at the commencement of the meeting, Mr. Shollenberger informed Dr. Massie-Burrell that she was being terminated due to previously undisclosed problems with her leadership abilities. Dr. Massie-Burrell was never told the identity of the complainants nor any specifics about their complaints, nor was she even given the promised update on the "status" of the OIE's investigation of her civil rights complaints.

32. At the conclusion of the July 6th meeting, Dr. Massie-Burrell was told she had until July 10th to accept a settlement agreement and resign from her position or else she would be involuntarily terminated. Dr. Massie-Burrell requested additional time to consider the settlement with the assistance of legal counsel, but this request was denied. Later that day and before she had made a decision, JHU issued a message falsely informing students, faculty, and staff that Dr. Massie-Burrell had resigned.

33. Following her termination, Dr. Massie-Burrell was disinvited from campus presentations and professional conferences she had been preparing to attend for months. JHU

informed these conferences of her termination and did not extend to Dr. Massie-Burrell the courtesy of allowing her to inform them of her inability to attend. Dr. Massie-Burrell's Maryland Senatorial appointment to the JHU Police Accountability Board was abruptly terminated. Dr. Massie-Burrell's access to her work emails was discontinued and she was barred from returning to her on-campus office to retrieve her personal effects.

34. Dr. Massie-Burrell promptly filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights, alleging both racial and disability discrimination and retaliation. The EEOC issued a right-to-sue letter on November 1, 2023, a copy of which is attached as **Exhibit A.**

## CAUSES OF ACTION
## COUNT I: RACIAL DISCRIMINATION/HARASSMENT
## 42 U.S.C. §2000e (TITLE VII)
## (JHU)

35. The facts alleged above are incorporated by reference.

36. While employed by JHU, Dr. Massie-Burrell was subjected to racial harassment. Ms. Axe engaged in a persistent and severely hostile course of conduct when she openly belittled Dr. Massie-Burrell in front of employees, transferred employees out of Dr. Massie-Burrell's office to the detriment of workplace performance and morale, and encouraged White employees to disregard Dr. Massie-Burrell's directions. This persistent and severe harassment altered the conditions of Dr. Massie-Burrell's employment and created an abusive and hostile work environment.

37. Although Dr. Massie-Burrell complained to HR and OIE about Ms. Axe's behavior, JHU failed to take action against Ms. Axe. When Dr. Massie-Burrell complained to Human Resources, she was quickly fired. Accordingly, JHU failed to exercise reasonable care in preventing and correcting such harassing behavior. Based on Defendants' course of conduct, Dr.

Massie-Burrell's race and disability were clearly motivating factors in terminating her employment with JHU. Throughout, JHU acted in reckless disregard of Dr. Massie-Burrell's federally protected rights.

38. As a direct and proximate result of the illegal discrimination outlined above, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## COUNT II: RETALIATION
## 42 U.S.C. §2000e (TITLE VII)
## (JHU)

39. The facts alleged above are incorporated by reference.

40. JHU fired Dr. Massie-Burrell because she complained of racial and disability discrimination. Dr. Massie-Burrell's May 24, 2023 complaint was based upon an objectively reasonable belief that Ms. Axe's misconduct constituted intentional discrimination. Mere weeks later, JHU made the decision to terminate Dr. Massie-Burrell. In doing so, Defendants did not even attempt to disguise the fact that Dr. Massie-Burrell's termination arose solely from her discrimination complaint. Again: JHU acted in reckless disregard of Dr. Massie-Burrell's federally protected rights.

41. As a direct and proximate result of JHU's illegal retaliation, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## COUNT III:
## RACIAL DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF PLAINTIFF'S EMPLOYMENT CONTRACT
## 42 U.S.C. §1981 (ALL DEFENDANTS)

42. The facts alleged above are incorporated by reference.

43. JHU intentionally discriminated against Dr. Massie-Burrell by allowing its employee, Ms. Axe, to engage in a severe and persistent course of conduct when she openly belittled Dr. Massie-Burrell in front of employees, transferred employees out of Dr. Massie-Burrell's office to the detriment of workplace performance and morale, and encouraged White employees to disregard Dr. Massie-Burrell's directions. This persistent and severe harassment altered the conditions of Dr. Massie-Burrell's employment and created an abusive and hostile work environment.

44. Although Dr. Massie-Burrell complained to HR and OIE about Ms. Axe's behavior, JHU failed to take action against Ms. Axe. When Dr. Massie-Burrell complained to Human Resources, she was quickly fired. Accordingly, JHU failed to exercise reasonable care in preventing and correcting such harassing behavior. Based on Defendants' course of conduct, Dr. Massie-Burrell's race and disability were clearly motivating factors in terminating her employment with JHU. JHU acted in reckless disregard of Dr. Massie-Burrell's federally protected rights.

45. Because Ms. Axe generally oversaw the day-to-day operation of JHU SDS offices, it was incumbent upon her to ensure that her employees were free from discrimination and that complaints of discrimination were properly addressed. Nonetheless, Ms. Axe intentionally infringed upon Dr. Massie-Burrell's rights secured by 42 U.S.C. §1981, herself perpetrating the very actions she was obligated to prevent.

46. The directive that Dr. Massie-Burrell be terminated because of her complaint of racial discrimination came from Mr. Shollenberger. Moreover, as Vice Provost of Student Health and Ms. Axe's direct supervisor, Mr. Shollenberger was obligated to ensure that JHU's employees were free from discrimination and that complaints of discrimination were properly addressed. Like Ms. Axe, Mr. Shollenberger intentionally infringed upon Dr. Massie-Burrell's rights secured by

42 U.S.C. §1981, instead of safeguarding those rights. Throughout, all Defendants acted in reckless disregard of Dr. Massie-Burrell's federally protected rights.

47. As a direct and proximate result of the illegal discrimination perpetrated by JHU, Ms. Axe, and Mr. Shollenberger, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## COUNT IV:
## RETALIATION: 42 U.S.C. §1981
## (ALL DEFENDANTS)

48. The facts alleged above are incorporated by reference.

49. JHU fired Dr. Massie-Burrell because she complained of racial and disability discrimination. Dr. Massie-Burrell's May 24, 2023 complaint was based upon an objectively reasonable belief that Ms. Axe's misconduct. constituted intentional discrimination. Mere weeks later, JHU made the decision to terminate Dr. Massie-Burrell. In doing so, Defendants did not even attempt to disguise the fact that Dr. Massie-Burrell's termination arose solely from her discrimination complaint. Defendants acted in reckless disregard of Dr. Massie-Burrell's federally protected rights

50. As a direct and proximate result of Defendants' illegal retaliation, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## COUNT V:
## DISABILITY DISCRIMINATION: 42 U.S.C. §12112 (ADA)
## (JHU)

51. The facts alleged above are incorporated by reference.

52. JHU as a private university is a covered employer under the ADA.

53. Dr. Massie-Burrell, as a result of her congenital limb amputation, as well as her broken ankle, is an individual with a disability.

54. JHU had notice of Dr. Massie-Burrell's disability. After breaking her ankle, Dr. Massie-Burrell was awarded reasonable accommodations by JHU to allow her to continue to perform the essential functions of her job. These accommodations included the ability to work from home for the duration of her convalescence.

55. However, due to Ms. Axe's conduct, in transferring staff out of Dr. Massie-Burrell's office and instructing the staff that remained to prioritize her own projects over Dr. Massie-Burrell's, Dr. Massie-Burrell was unable to take full advantage of the accommodations previously awarded to her in that she was forced to work long hours in-person to make up for the staffing issues.

56. By allowing Dr. Massie-Burrell's supervisor to sabotage her workplace and prevent her from taking advantage of the accommodations awarded to her, JHU failed to accommodate Dr. Massie-Burrell's disability, and did so in reckless disregard of Dr. Massie-Burrell's federally protected rights.

57. As a direct and proximate result of JHU's illegal discrimination, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## COUNT VI:
## DISCRIMINATION: Md Code State Govt § 20-606 (MFEPA)
## (JHU)

58. The facts alleged above are incorporated by reference.

59. JHU as a private university is a covered employer under the MFEPA.

60.     Dr. Massie-Burrell, as a result of her congenital limb amputation, as well as her broken ankle, is an individual with a disability.

61.     JHU had notice of Dr. Massie-Burrell's disability. After breaking her ankle, Dr. Massie-Burrell was awarded reasonable accommodations by JHU to allow her to continue to perform the essential functions of her job. These accommodations included the ability to work from home for the duration of her convalescence.

62.     However, due to Ms. Axe's conduct, in transferring staff out of Dr. Massie-Burrell's office and instructing the staff that remained to prioritize her own projects over Dr. Massie-Burrell's, Dr. Massie-Burrell was unable to take full advantage of the accommodations previously awarded to her in that she was forced to work long hours in-person to make up for the staffing issues.

63.     By allowing Dr. Massie-Burrell's supervisor to sabotage her workplace and prevent her from taking advantage of the accommodations awarded to her, JHU failed to accommodate Dr. Massie-Burrell's disability, and did so in reckless disregard of Dr. Massie-Burrell's protected rights.

64.     As a direct and proximate result of JHU's illegal discrimination, Dr. Massie-Burrell has suffered lost wages and employment benefits, and has endured severe emotional distress accompanied by physical symptoms.

## **CLAIMS FOR RELIEF**

Dr. Massie-Burrell respectfully requests this Honorable Court grant the following relief:

A.      Enter a judgment in favor of Plaintiff and against all Defendants, jointly and severally, for compensatory damages.

B.   Enter a judgment in favor of Plaintiff and against all Defendants, jointly and severally, for punitive damages.

C.   Assess reasonable attorneys' fees and costs of suit in favor of Plaintiff and against all Defendants, jointly and severally.

D.   Enter a declaratory judgment that all Defendants violated Plaintiff's rights under the laws of the United States.

E.   Enter an injunction compelling Defendants to reinstate Plaintiff, and prohibiting Defendants from further discrimination and retaliation, or, in the alternative, compelling Defendants to pay Plaintiff "front-pay."

F.   Grant Plaintiff such other and further relief as the nature of his cause may warrant.

/s/
_____
ROBIN R. COCKEY, Federal Bar No. 02657
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811